HEWITT and others *vs.* MILLER and others.

A mere negotiation, between the parties to a contract, for an amicable settlement of a disputed claim for damages, on account of the breach thereof, will not have the effect, in the absence of any agreement on the subject, to alter, or postpone, the legal rights of the parties as they existed when the breach took place.

Upon the breach, by the purchaser, of a contract to take the property sold to him, and to pay a stipulated price therefor, the measure of damages is the difference between the contract price and the value of the property at the time of the breach.

APPEAL, by the defendants, from a judgment entered on the verdict of a jury.

The action was brought to recover damages for a refusal, by the defendants, to perform a contract.

The complaint alleges that the defendants, on the 6th of January, 1866, entered into an agreement to purchase of the plaintiffs, and pay for, five hundred barrels of oil, to be delivered at the yard, and to lighter. That on the 9th, while the plaintiffs were entitled to performance of the contract, the defendants notified the plaintiffs that they would not perform, nor receive performance, and persisted in their refusal. That in consequence of such refusal the plaintiffs sustained damages, &c.

The answer admitted the making of the contract, but put in issue the other allegations of the complaint. For a second defense the defendants alleged, that at the time of making the agreement the plaintiffs had only one hundred and twenty-eight barrels of oil, and had not delivered, and could not deliver, the balance, and that the plaintiffs did not tender the oil. For a third defense they set forth a contract between them and one Christie, and alleged that they wanted the plaintiffs' oil to fill that contract, and that the plaintiffs falsely and fraudulently represented that they had oil suitable to fill it, &c. For a fourth defense, the defendants interposed a counter-claim for damages on the ground that the plaintiffs did not fulfill the contract.

Upon the trial the plaintiffs proved the contract, and that the same day the contract was signed the plaintiffs gave, to the defendants, an order on Venango Yard to permit the defendants to inspect two hundred and fifty barrels—the defendants saying that that was all that the defendants wanted until they should give the plaintiffs further notice. The defendants gave the order to their employee, Mr. Harrison, who reported to the defendants that he had been to Venango Yard and found two hundred and one barrels of circle D. oil, and that the gravity was not satisfactory. On the 9th, on change, the defendant Miller reported this to Mr. Hewitt, the plaintiff, who said the defendants' man had made a mistake; that the plaintiffs had the oil there, and the plaintiff asked the defendant to permit him to rectify the mistake. But oil had fallen in price, and the defendants immediately, on the report of Mr. Harrison, their own agent, threw up the contract, and absolutely refused to perform, or accept performance by the plaintiffs. The plaintiffs, on the next day, the 10th, caused the defendants' inspector to reinspect that before inspected, with forty-nine barrels more, to make up the two hundred and fifty barrels. He re-

ported the gravity as 44½ to 45 degrees. The plaintiffs immediately made out an order on the yard for the delivery of the oil, and sent it, with gauger's return and bill, to the defendants, who absolutely refused to receive any oil. At the time of this refusal the plaintiffs were able and willing to deliver the oil. The defendants refusing to receive the first two hundred and fifty barrels, and the defendants not calling for the other two hundred and fifty barrels, the plaintiffs wrote a letter to the defendants on the 13th of January, requesting them to name an inspector, and the defendants replied, proposing arbitration. An arbitration was thereupon had, and all the proceedings, suspended, awaiting the decision. The arbitration continued up to the 1st of February, the plaintiffs offering to abide by the report of the arbitrators, but the defendants refusing; and immediately afterwards the plaintiffs sold the oil to one Cozzens, and sent to the defendants a bill of the difference between the amount realized and the contract price. The plaintiffs previously, on the 1st of February, made a tender of the whole five hundred barrels, by tendering inspectors' certificates of the quality, and delivery orders on the yard for five hundred barrels. The defendants again declined to receive any oil.

The defendants never made any tender, or payment. Never made any demand for any oil. No lighter was ever sent to the yard for any oil. The plaintiffs then called witnesses, who testified that they inspected the oil that the plaintiffs tendered, and that it was of the gravity called for by the contract.

The defendant Miller very faintly attempted to deny that he threw up the contract. He only denied that he said so at the particular interview, in relation to which he was questioned. He admitted that he met the plaintiff subsequently on the same day, on change, and had some conversation; what it was he does not say. He did not deny that oil fell in price after the contract was made.

He did not pretend that he ever offered to receive any oil under the contract, or that he ever demanded any, or ever named any inspector for the last two hundred and fifty barrels.

On the subject of damages, the judge charged the jury as follows : " Bearing upon the question of damages is the incident of a negotiation having been commenced with a view to a settlement of this controversy. Both parties testify that there was an attempted settlement, and the evidence was admitted simply for the purpose of fixing a date, and because it had some bearing upon the measure of damages to be observed in this case. That negotiation having been commenced, it had the legal effect of suspending the obligation, in my judgment, of the parties to this controversy, and I so charge you. When that negotiation ceased, then it became the right, according to the determination of the controversy, either for the defendants to have their oil, or for the plaintiffs to have their damages. It is not in evidence what that result was, if there was any, and it is perhaps in evidence that no result was arrived at. So, then, you are to determine upon the evidence in the case when their negotiations ceased, and when, therefore, in consequence of their having ceased, the parties were remitted to their original standing. According to the testimony of the defendant Miller, they ceased about the 18th of January, and according to the testimony of Mr. Hewitt, they ceased on the 24th of that month. The contract price of the oil was $39\frac{1}{2}$ cents a gallon. If the negotiations ceased upon the 18th of January, then the amount of damages to be awarded to the plaintiff would be the difference between the contract price ($39\frac{1}{2}$ cts.) and the value of the oil on the 18th of January, which was $33\frac{3}{4}$ cents to $34\frac{1}{2}$. If the negotiations ceased upon the 24th, then the amount of damages would be the difference between $39\frac{1}{2}$ cents and 32 or 33 cents, which was the price upon the 25th, the day following."

· The defendants excepted to this portion of the charge.

The jury rendered a verdict in favor of the plaintiffs for $1774.55.

The defendants' counsel, at the same term, moved to set aside the verdict, and for a new trial on the judge's minutes, upon the exceptions taken by the defendants on the trial, and upon the ground of the insufficiency of the evidence, and especially upon the ground. that there was no proof in the case that the oil alleged to have been tendered was of the gravity demanded by the contract. The motion was heard by the said judge at the same term, and by him denied, and the defendants appealed from the said order denying a new trial, and from the judgment ·entered upon the verdict.

*Evarts, Southmayd & Choate,* for the appellants.

*W. Stanley,* for the respondents.

· CARDOZO, J. I think the rule of damages laid down at the trial was erroneous. I do not understand, and can find no authority for the proposition, that a mere negotiation for an amicable settlement of a disputed claim has the effect, in the absence of any agreement upon the subject, to alter, or postpone, the legal rights of the parties as they existed when the breach of contract took place. Nothing took place which could have prevented the plaintiffs from suing immediately. Their legal right to do so was not affected by the negotiation. The breach occurred on the 10th of January, 1866, when the defendants absolutely refused either to perform the contract on their part, or to receive performance from the plaintiffs, and notified the plaintiffs to that effect. The question is, what is the proper measure of damages. The defendants were under contract to take certain oil and pay a stipulated price, and in such a case, upon breach of the contract, I understand

---

Hewitt *v.* Miller.

---

the rule to be well settled, that the measure of damages is the difference between the contract price and the value of the property at the time of the breach. (*Havemeyer v. Cunningham*, 35 *Barb.* 515. *Norton* v. *Wales*, 1 *Rob.* 561.) Since writing the above, the counsel for the respondents has directed our attention to the case of *Ogle* v. *Vane*, (3 *Law Rep., Q. B. Cases*, 272.) The general rule, as to the measure of damages, is recognized in that case to be as I have stated it; but a different rule was applied there, upon grounds quite distinct from any that this case presents. In that case there was evidence that the defendants requested delay for their benefit, to enable them to substitute other iron in place of that which they had contracted to deliver, but could not; and the plaintiffs acquiesced in the request. It was a clear extension of the time of performance.

Here the only proposition was to leave out the matter to arbitration; to settle it without a lawsuit. That is a very different thing from granting delay to enable a party to perform a contract, either as originally existing, or by substituting something which the other party was willing to accept.

The judgment should be reversed, and a new trial ordered; costs to abide the event.

INGRAHAM, P. J., concurred.

GEO. G. BARNARD, J., (dissenting.) The only question for examination, in this case, was that as to the proper rule of damages. That, I think, was properly laid down by the judge, in his charge to the jury. I find no other error, in the case.

The judgment appealed from should be affirmed.

New trial granted.

[FIRST DEPARTMENT, GENERAL TERM, at New York, January 1, 1872. *Ingraham*, P. J., and *Cardozo* and *Geo. G. Barnard*, Justices.]